UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DONELL DAVIS, | ) |
| Petitioner, | ) |
| v. | ) No. 1:19-cv-03065-JMS-TAB |
| WENDY KNIGHT, | ) |
| Respondent. | ) |

**Order Denying Petition for a Writ of Habeas Corpus
and Directing Entry of Final Judgment**

Indiana prison inmate Donell Davis petitions for a writ of habeas corpus challenging a prison disciplinary sanction imposed in disciplinary case number CIC 19-06-0086. For the reasons explained in this Order, Mr. Davis's habeas petition must be **denied**.

**A.    Overview**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

B.   **The Disciplinary Proceeding**

On June 9, 2019, Indiana Department of Correction (IDOC) Secretary M. Carter was reviewing inmate conduct reports in the Offender Information System (OIS) when she determined that inmate Donell Davis had accrued five Class C offenses within a six-month period. She wrote a Report of Conduct charging Mr. Davis with being a habitual rule violator. The conduct report states:

> On 6-6-19 at 12:47 pm I, Secretary M. Carter was reviewing conduct in OIS when I became aware offender Davis, Donell 201463 25B 4A has accrued 5 class C conduct reports within a 6 month time frame. The dates and codes are as follows: 12-17-19 C 250; 12-18-18 C 347; 2-5-19 C 347; 3-11-19 C 366; and 6-3-19 C 366. This makes offender Davis 201463 a habitual rule violator.

Dkt. 7-1 [sic].

Being a habitual rules violator is a violation of the IDOC's Adult Disciplinary Code offense B-200.

Mr. Davis was notified of the charge on June 10, 2019, when he received the Screening Report. He pleaded not guilty, and did not request evidence or witnesses. A copy of the conduct report was not provided to Mr. Davis until June 18, 2019.

A hearing was held on June 19, 2019. Mr. Davis declined to make a statement at the hearing, stating "No Comment. This is past the seven days." Dkt. 7-5. Based on Mr. Davis's statement and the staff reports (the conduct report), the hearing officer found Mr. Davis guilty of being a habitual rule violator. *Id.* The sanctions imposed included a sixty-day earned-credit-time deprivation and a credit class demotion. *Id.*

Mr. Davis appealed to the Facility Head and the IDOC Final Reviewing Authority, but both appeals were denied. Dkts. 6 & 7. He then brought this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

C. Analysis

Mr. Davis raises three grounds for habeas corpus relief. First, he contends that the disciplinary hearing officer (DHO) failed to comply with IDOC policy 02-04-101 which requires the DHO to meet with the offender (for screening) within seven days of the offense. Dkt. 1 at 3-4. Mr. Davis argues that the DHO's screening was eight days after the date of the offense. *Id.* at 4. Second, Mr. Davis contends that the dates listed on the conduct report and the screening report are different, and that this discrepancy amounts to a "major error in my due process." Third, Mr. Davis contends that one of the dates of an underlying Class C conduct report is "completely wrong." The Warden has responded and argues that the violation of an IDOC policy is not a cognizable federal due process claim, and that the differences in dates on the forms are scrivener's errors which did not prejudice Mr. Davis. Dkt. 7. Construing Mr. Davis's third ground for habeas corpus relief as challenging the sufficiency of the evidence, the Warden argues that some evidence supports the DHO's decision. *Id.* Mr. Davis did not reply to the Warden's arguments.

1. **Violation of IDOC Policy**

Prison policies, regulations, or guidelines do not constitute federal law; instead, they are "primarily designed to guide correctional officials in the administration of a prison . . . not . . . to confer rights on inmates." *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995). Therefore, Mr. Davis's prison policy claim is not cognizable in federal court and cannot be a basis for habeas relief. *See Williams v. Hyatte*, 770 F. App'x 285, 286 (7th Cir. 2019) (holding that "a violation of prison policy is a state-law matter and thus cannot provide a basis for federal habeas relief") (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 & n.2 (1991); *Keller v. Donahue*, 271 F. App'x 531, 532 (7th Cir. 2008) (rejecting challenges to a prison disciplinary proceeding because, "[i]nstead of addressing any potential constitutional defect, all of [the petitioner's] arguments relate to alleged

departures from procedures outlined in the prison handbook that have no bearing on his right to due process"); *Rivera v. Davis*, 50 F. App'x 779, 780 (7th Cir. 2002) ("A prison's noncompliance with its internal regulations has no constitutional import—and nothing less warrants habeas corpus review.").

### 2. Inconsistent Dates on Screening Report and Conduct Report

Mr. Davis's argues that the different dates listed on the screening report and conduct report was "a major error in [his] due process." Dkt. 1 at 4. But he does not explain how he was prejudiced by the error. At the disciplinary hearing, the only statement Mr. Davis made in his defense referred to the failure of prison officials to notify him of the charge within seven days of issuing the conduct report. Dkt. 7-5. There is no argument that he was confused by the errors in dates and could not therefore have known what conduct he was to defend or that it prevented him from requesting relevant witnesses or evidence. Mr. Davis's claim is that the discrepancies in the dates is *per se* prejudicial and warrants habeas corpus relief. This is not the case.

The Court discerns no constitutional error from this scrivener's error. All parties knew what the alleged offense was and what evidence it was based on. There is no suggestion in the record that Mr. Davis was prejudiced in any way by the mistake. Because there is no prejudice shown or suggested, any error was harmless. *See Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011) (applying harmless error doctrine to prison disciplinary proceedings); *Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003).

### 3. Wrong Date on Underlying Offense

In the conduct report, the IDOC secretary listed five Class C conduct violations committed by Mr. Davis to establish that he was a habitual rules violator. Dkt. 7-1. The first listed offense was dated "12-17-19." Mr. Davis correctly notes here that because the conduct report was written

4

on June 9, 2019, it was an error to allege a December 2019 previous conduct violation conviction. This, too, is apparently a scrivener's error, because the Offender Information System printout showing Mr. Davis's prior Class C conduct violations shows the date should be 12-17-18. Dkt. 7-2.

Mr. Davis did not defend himself at the disciplinary hearing by directing the DHO's attention to the mistake. Dkt. 7-5. Instead, other than pointing out that he was screened more than seven days after the conduct report was issued, he had "no comment." *Id.* Moreover, he has not explained how this error caused him prejudice. The Court cannot discern how this mistake prejudiced Mr. Davis or hindered his defense. Thus, if there was any error, it was harmless. *Jones*, 637 F.3d at 847 (applying harmless error doctrine to prison disciplinary actions).

The Warden construes Mr. Davis's third ground for relief as challenging the sufficiency of the evidence. Dkt. 7 at 7. So construed, the Court finds there is "some evidence" to support the conviction.

Challenges to the sufficiency of the evidence are governed by the "some evidence" standard. "[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274; *see also Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted). The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56. As noted above, there was "some evidence" to support the DHO's decision that Mr. Davis was a habitual rules violator.

### D. Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Davis to the relief he seeks. Accordingly, Mr. Davis's petition for a writ of habeas corpus must be **denied** and the action dismissed. Final judgment consistent with this Order shall now issue.

**IT IS SO ORDERED.**

Date: 4/6/2020

*[signature]*
Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Donell Davis
201463
Pendleton Correctional Industrial Facility
Inmate Mail/Parcels
5124 West Reformatory Road
Pendleton, IN 46064

Abigail Recker
Indiana Attorney General
abigail.recker@atg.in.gov